UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――――

PHILLIP JEAN-LAURENT,

                              Plaintiff,

                                                        9:11-CV-186
v.                                                      (NAM/TWD)

C.O. LANE; C.O. BRIGGS; C.O. TYNDALL; JOHN
DOE #1; JOHN DOE #2; SGT. BEARD; SGT.
PAULINE; LT. JONES; DSS McAULIFFE; DR.
MAYS; DR. JOHN DOE; JANE DOE; SUPT.
BARKLEY; SUPT. HULIHAN; DEP. COMM.
LINQUIST,

                              Defendants.

―――――――――――――――――――――――――――――――――

APPEARANCES:                          OF COUNSEL:

PHILLIP JEAN-LAURENT
Plaintiff *pro se*
P.O. Box 200016
Ozone Park, NY 11420-0016

HON. ERIC T. SCHNEIDERMAN              GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

<u>**REPORT AND RECOMMENDATION**</u>

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, was

initially referred to Magistrate Judge George H. Lowe for Report and Recommendation by the

Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

N.D.N.Y. L.R. 72.3(c). Upon Magistrate Judge Lowe's retirement on February 9, 2012, the case was reassigned to me. Plaintiff Phillip Jean-Laurent ("Jean-Laurent") has brought this action against Defendants Correctional Officers Patrick Lane ("Lane"), Allen Briggs ("Briggs"), and Seth Tyndall ("Tyndall"); Correctional Sergeants Matthew Beard ("Beard") and David Pawlin ("Pawlin") (sued incorrectly as "Sgt. Pauline"); Correctional Lieutenant Norman Jones ("Jones"); Deputy Superintendent Security Brian McAuliffe ("McAuliffe"); Superintendents Warren Barkley ("Barkley") and William Hulihan ("Hulihan"); Appeal Review Officer Norman Bezio ("Bezio"); Deputy Commissioner Christopher Lindquist ("Lindquist") (sued incorrectly as "Dep. Comm. Linquist"); Dr. Charles Moehs ("Moehs") (sued incorrectly as "Dr. Mays); John Does #1 and #2; Dr. John Doe; and Jane Doe. (Dkt. Nos. 1, ¶¶ 9-16, and 6-17.[1] )

Defendants, with the exception of the four Doe Defendants who have not yet been identified and served, now move to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] (Dkt. No. 23.) For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND[3]

### A.    Facts Concerning Plaintiff's Claims Arising Out of his Storage of Draft Bags and the Destruction of His Legal Documents

Plaintiff is a former prisoner of the New York State Department of Correctional and

---

[1] Page numbers in citations to filed documents refer to the page numbers assigned by the Court's electronic filing system rather than to the page number in the original document.

[2] Because the Doe Defendants have been excluded from the motion, this Report and Recommendation does not address the legal sufficiency of the claims asserted against them in the Complaint.

[3] The background facts set forth herein are taken from Plaintiff's Complaint.

Community Supervision ("DOCCS").  (Dkt. No. 1, ¶ 8.)  In January of 2008, Plaintiff was transferred from Elmira Correctional Facility ("Elmira") to Cape Vincent Correctional Facility ("Cape Vincent").  *Id*. at ¶ 17.  Eight draft bags containing Plaintiff's personal property were sent from Elmira to Cape Vincent at the time of the transfer.  *Id*.  Plaintiff's personal belongings did not all fit into the storage lockers provided for his use at Cape Vincent, so he stored personal legal documents and materials and books in two draft bags placed neatly under his bunk.  *Id*. at ¶ 18.

Defendant Lane, who was the steady housing unit officer at the time, advised Plaintiff that he could not store belongings in draft bags and would have to purchase storage containers from the commissary for his excess belongings.  *Id*. at ¶ 19.  When Plaintiff informed Lane that he had no funds to purchase the containers because of his transfer and assured him that he would purchase the containers when his funds arrived from Elmira, Lane agreed to allow him to use the draft bags until he was able to comply with the storage policy.  *Id*. at ¶ 20.  The funds transferred from Elmira were collected by Cape Vincent, so Lane allowed Plaintiff to use the draft bags for another two weeks.  *Id*. at ¶ 21.  Lane agreed to continued use of the bags when funds Plaintiff subsequently received from home were also collected by Cape Vincent.  *Id.*

Lane subsequently learned that Plaintiff was litigating an action against correctional officers and issued Plaintiff a misbehavior report for possessing the two draft bags in his living quarters the same day.  *Id.* at ¶ 22.  Defendant Pawlin, who was the hearing officer on the claimed rule violations, directed Plaintiff to discard several hundred pages of legal materials and documents essential to pending litigations.  *Id.*

After the hearing, Plaintiff learned of a state-wide policy directive that he believed

permitted him to retain two draft bags to store personal belongings in his cell.[4]  *Id*. at ¶ 23.  When

he informed Defendant Lane of the directive, Lane "outburst his disregards for the policy

directive." *Id.*  Plaintiff sought redress through the administrative grievance procedure.  When

Lane learned of Plaintiff's grievance, he contacted Defendant Beard, a Corrections Sergeant at

Cape Vincent, and during phone conversations with Beard, Lane repeatedly referenced

departmental directives, facility policy manuals, and the inmate's misbehavior handbook.  *Id*. at ¶

24.  Lane directed Plaintiff to turn over the draft bags and moments later Defendants Beard and

Lane, along with other corrections officers, manacled Plaintiff and took him to the Special

Housing Unit ("SHU").  *Id.*  Plaintiff's Complaint does not state the length of time during which

he remained in the SHU.

Defendants Briggs and Tyndall subsequently packed Plaintiff's belongings, and while

doing so, deliberately emptied a container of melted ice into a bag filled with legal documents,

destroying several items and a significant portion of legal materials and documents essential to

Plaintiff's appeal in an unidentified case pending in the Second Circuit Court of Appeals.  *Id.* at ¶

---

[4]  Plaintiff is presumably referring to Section III of DOCCS Directive #4917 which
provides in part:

> Personal property possessed by an inmate assigned to double cell
> housing shall be limited to the amount of property that will fit in
> three standard draft bags (including legal materials).  Inmates will
> be responsible for proper storage of property and the neat and
> orderly appearance of their cells.

> A.    Storage of Property.  An inmate assigned to double
>        occupancy cell housing will be allowed to possess in his or
>        her cell two draft bags provided by the Department for
>        storage of property.  Any property beyond what can be
>        stored in the individual locker may be stored in these bags.

25. According to Plaintiff, the Second Circuit had granted him an enlargement of time to file a petition for a hearing or rehearing *en banc.* Because the documents were destroyed, Plaintiff was unable to file the petition within the enlargement period. *Id.*

Plaintiff thereafter had a disciplinary hearing on possession of the two draft bags and allegedly fabricated rule violations.[5] *Id.* at ¶ 26. Defendant Jones, the hearing officer, found Plaintiff not guilty of the fabricated rule violations. However, he found Plaintiff guilty of possessing the two draft bags, despite what Plaintiff believes to have been a clear departmental directive evidencing that no rule violation had occurred. *Id.* Plaintiff was punitively sanctioned for the draft bag violation. *Id.*

### B. Plaintiff's Claims of Cruel and Inhuman Treatment and Deliberate Indifference to his Serious Medical Needs Against Defendants Pawlin, Moehs, McAuliffe, and Bezio

Prior to Plaintiff's SHU confinement, he had been scheduled for oral surgery and medical treatment for chronic low back pain. *Id.* at ¶ 27. Plaintiff was not allowed to keep his appointments because he was punitively confined in the SHU and was left to endure "unbearable toothaches, extreme eating and hygienical discomfort, as well as excruciating lower back pain during and after his SHU confinement." *Id.* Once Plaintiff was released from SHU confinement, he was required to start anew the lengthy and time consuming procedure of scheduling dental and medical appointments. *Id.* According to Plaintiff, Defendants McAuliffe and Barkley were cognizant of the routine practice of denying prisoners confined in the SHU reasonable and

---

[5] Plaintiff has not identified the nature of the allegedly fabricated rule violations in his Complaint. (*See* Dkt. No. 1.) Although Plaintiff's Complaint does not specifically identify the person(s) responsible for filing the misbehavior report that led to the hearing, it can be inferred from other allegations that Defendants Lane and Beard were behind the report.

adequate dental and medical care and/or knowingly implemented or allowed the practice. *Id*.

When Plaintiff was released from the SHU, he was required to carry his belongings, including at least eight draft bags weighing eighty or more pounds, to an assigned housing unit over four-hundred yards away in snowy frigid weather and was not allowed to use an available pushcart or have another inmate assist him, despite informing Defendant John Doe #1 of his medical condition and level of pain. *Id*. at ¶ 28. Plaintiff strained his lower back as a result and endured tremendous pain for at least two weeks. *Id*. According to Plaintiff, Defendant Pawlin thereafter subjected Plaintiff to a pattern of harassing inter-facility movements that required Plaintiff to move his belongings to different housing units. *Id.*

Plaintiff was punitively confined in the SHU in April of 2008 as a result of sanctions imposed by Defendant Jones.[6] *Id*. at ¶ 29. Plaintiff was not permitted to keep his rescheduled dental and medical appointments because of the confinement. *Id*. at ¶ 29. When he left the SHU after serving several weeks, Plaintiff was, for a second time, required to carry all of his personal belongings without assistance or a pushcart despite informing Defendant John Doe #2 of his medical condition and pain. *Id.* Plaintiff hurt his back transporting his belongings. *Id.* When he reported to sick call, Defendant Jane Doe told him that she was not going to do anything for him, and she would not give him a medical excuse from carrying the rest of his personal belongings to his housing unit. *Id*.

Approximately four months later, after filing a grievance and personally seeking redress from DOCCS' Chief Medical Officer, Plaintiff was examined by Dr. Rosner and finally had one

---

[6] It is not entirely clear from the Complaint whether Plaintiff was confined in the SHU by Defendant Jones as a result of Jones' finding that Plaintiff was guilty of possessing two draft bags or for some other reason. *See* Dkt. No. 1 at ¶ 26.

of two troubling wisdom teeth extracted and received a few physical therapy sessions, *Id*. at ¶ 30.

Upon completion of the initial therapy sessions, the therapist concluded that the course of

treatment had been effective and that Plaintiff was in need of further therapy. *Id*. at ¶ 31. The

therapist also recommended that Plaintiff be given a TENS unit for self-administered therapy.

*Id*. However, at a follow-up appointment with Defendant Moehs, who had replaced Dr. Rosner

as Plaintiff's health care provider, Moehs informed Plaintiff that he would not continue with the

recommended course of treatment or provide the TENS unit and told Plaintiff to live with the

pain. *Id*.

      **C.**    **Plaintiff's Claim that he was Denied a Fair and Impartial Hearing by
Defendant McAuliffe**

In preparation for an August 2008 disciplinary hearing, Plaintiff attempted to obtain

documentary evidence he believed was relevant and necessary to his defense. *Id.* at ¶ 32.

Plaintiff's request was denied by Defendant McAuliffe, who presided over the disciplinary

hearing and allegedly made false representations to Plaintiff to induce him to enter into an

involuntary and unintelligent plea agreement. *Id.* McAuliffe is alleged to have unfairly and

unilaterally penalized Plaintiff for an altercation with another prisoner and sanctioned Plaintiff to

punitive segregation for six months at Mid-State Correctional Facility ("Mid-State"), with a

concomitant loss of privileges and recommended loss of good time, which extended Plaintiff's

term of imprisonment to the maximum. *Id*. at ¶ 33. The other prisoner was not sanctioned at all.

*Id*.

Plaintiff appealed McAuliffe's determination to Defendant Bezio on the grounds that he

had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced,

and that he had been denied due process and equal protection of the law as supported by documentary evidence. *Id*. at ¶ 34. Defendant Bezio affirmed McAuliffe's determination. *Id*.

**D.** **Alleged Indifference to Plaintiff's Serious Medical and Dental Needs While in the SHU at Mid-State**

During the period of his confinement in the SHU at Mid-State, Plaintiff continued to experience excruciating back pain and toothaches. *Id*. He requested and was denied treatment by Defendant Dr. John Doe based upon Moehs' medical entry, without any physical examination. *Id*. Plaintiff received dental care to the extent of having dental x-rays taken after grieving the matter to Defendant Hulihan. *Id*. However, his painful wisdom tooth was not extracted. *Id*. Despite making articulate, detailed complaints of being deprived necessary and adequate medical and dental care to Defendants Barkley, Hulihan, and Lindquist, Plaintiff's complaint was denied as unsubstantiated and no significant steps were taken to ensure that Plaintiff received necessary and adequate medical and dental care prior to his transfer from Mid-State to Downstate Correctional Facility. *Id*.

**II.    PROCEDURAL HISTORY**

Plaintiff filed his Complaint on February 17, 2011. (Dkt. No. 1.) Plaintiff's application to proceed *in forma pauperis* was granted by Judge Mordue in a June 1, 2011 Decision and Order (Dkt. No. 2) in which the District Court dismissed Plaintiff's claim for destruction of property against Defendants Briggs and Tyndall, with prejudice, and his equal protection claim against Defendants McAuliffe and Bezio, without prejudice, under 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case any time if the court determines that ... (B) the action . . . (i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). *Id*. at pp. 6-8. Judge Mordue otherwise accepted the Plaintiff's complaint for filing, specifically noting that in doing so, the District Court was expressing no opinion as to whether Plaintiff's remaining claims could withstand a properly made motion to dismiss or for summary judgment. *Id*. at p. 9. The District Court also ordered Plaintiff to take reasonable steps to ascertain the identities of the "John Doe" and "Jane Doe" defendants and cautioned him that failure to serve the unnamed defendants in a timely manner may result in the action being dismissed against them. *Id*. at pp. 8-9.

## III. ANALYSIS

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). The motion tests the formal legal sufficiency of a complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not

suffice. *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition papers) (citations and internal quotations marks omitted), *vacated and amended in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004). *See also Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).[7]

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

### B.    Plaintiff's Official Capacity Claims For Money Damages Against the Defendants

Defendants have moved for dismissal of Plaintiff's official capacity claims for money

---

[7] Defendants have submitted DOCS Directive #4913, entitled "Inmate Personal Property Limits" in support of their motion to dismiss. (Dkt. No. 23-2 at pp. 2-9.) Plaintiff has also relied upon the Directive in his opposition papers as support for his argument that state-wide policy allowed him to store his excess personal belongings in the two draft bags under his bunk. (Dkt. No. 27 at p. 12.) Since the Directive is integral to the Plaintiff's Complaint, the Court can consider it on Defendants' Rule 12(b)(6) motion without converting the motion to one for summary judgment. However, because the Directive, on its face, can be construed to offer some support for both Plaintiff and Defendants' position, it is of little value in determining the motion before the Court.

The Declaration of Sandra Prusak, also submitted in support of Defendants' motion to dismiss, references a disciplinary packet that was supposed to be attached to the Declaration. (Dkt. No. 23-3 at p. 2.) Inasmuch as the Disciplinary Packet is not attached to the Declaration as filed, the Court need not consider whether it, or Prusak's reference to its contents, can be considered on a Rule 12(b)(6) motion.

damages under 42 U.S.C. ¶ 1983.  (Dkt. No. 1 at ¶¶ 9-10, 12-16.; Dkt. No. 23-1 at pp. 19-20.)

The Eleventh Amendment protects states against suits brought in federal court.  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)) and bars all money damages claims against state officials acting in their official capacities, including the moving Defendants herein.  *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *see also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (an inmate plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity.)  Therefore, I recommend that the Plaintiff's §1983 claims brought against the moving Defendants in their official capacities be dismissed without leave to amend.

 **C. Claim Against Defendants Briggs and Tyndall for Denial of Access to Court on a Matter Before the Second Circuit Court of Appeals**

  Plaintiff claims that documents essential to an appeal he had pending in the Second Circuit Court of Appeals were destroyed when Defendants Briggs and Tyndall deliberately emptied a container of melted ice into Plaintiff's bag.  As a result, Plaintiff was unable to file a petition for a hearing or rehearing *en banc* in the case before the filing deadline.  (Dkt. No. 1 at ¶ 25.)  Plaintiff has not identified the action, nor has he described the nature of the action or the appeal on which he was seeking an *en banc* hearing or rehearing.

  The Supreme Court has long held that inmates are guaranteed a right of access to the

courts under the First Amendment of the Constitution. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see also Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."). In order to state a claim for denial of access to court under § 1983, Plaintiff must assert non-conclusory allegations demonstrating that Defendants Briggs and Tyndall's alleged conduct in destroying his legal documents was deliberate and malicious. *See Lewis*, 518 U.S. at 349, 351; *Gonzales v. Carpenter* No. 9:08-CV-629 (LEK/ATB), 2011 WL 768990, at *7, 2011 U.S. Dist. LEXIS 18806, at *26 (N.D.N.Y. Jan. 3, 2011) (Baxter, M.J.). Plaintiff's Complaint, liberally construed, satisfies that requirement.

However, Plaintiff must also assert non-conclusory allegations showing that the interference with his right of access to court resulted in actual injury. *Lewis,* 518 U.S. at 348-349. To do that, Plaintiff must describe the underlying claim allegedly frustrated by the interference well enough to establish that it is "nonfrivolous" and "arguable" in nature. *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002) (underlying cause of action "is an element that must be described in the complaint."); *Arar v. Ashcroft*, 532 F.3d 157, 188-89 (2d Cir. 2008), *cert. denied*, ___ U.S. ___, 130 S.Ct. 3409 (2010) (following *Christopher* in requiring that the complaint include a description of the "nonfrivolous," "arguable" claim that the plaintiff has lost). Plaintiff must set forth sufficient facts to suggest that success on the underlying claim is found on "more than hope." *Christopher*, 536 U.S. at 416.

Plaintiff has provided no information whatsoever concerning the matter in the Second Circuit and has thus failed to state a claim for denial of his First Amendment right of access to

court against Defendants Briggs and Tyndall.[8]  For that reason, I recommend that Plaintiff's claim for denial of access to court against Defendants Briggs and Tyndall be dismissed. Inasmuch as it is possible that Plaintiff may be able to remedy the defect in his Complaint by including specific information regarding his underlying claim, I also recommend that he be granted leave to amend.

### D. Retaliation Claims Against Defendants Lane, Pawlin, Beard, Briggs, Tyndall, and Moehs

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Pidlypchak*, 389 F.3d at 381-83.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

---

[8]  The fact that Plaintiff was seeking a hearing or rehearing *en banc* raises the inference that he had been unsuccessful on an appeal to the Second Circuit.

*grounds*, *Swierkewicz ,*534 U.S. 506.

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pidlypchak*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Co-op. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)).

### 1. Retaliation Claim Against Defendant Lane

According to Plaintiff, Defendant Lane, who had been allowing him to keep two draft bags

of personal items under his bunk, issued a misbehavior report against Plaintiff for possessing the two bags right after learning that Plaintiff was litigating a civil action against correctional officers. (Dkt. No. 1 at ¶¶ 20-22.)  When Lane learned later that Plaintiff had filed a grievance in reliance upon a state-wide directive Plaintiff believed allowed him to possess two draft bags for temporary storage of his personal belongings[9], Lane ordered Plaintiff to turn over the draft bags and had him manacled and taken to SHU.  *Id.* at ¶¶ 23-24.

Plaintiff claims that he was charged with a violation for possessing the two draft bags and other fabricated rule violations.  (Dkt. No. 1 at ¶ 26.)  The Court has inferred that Lane was involved in Plaintiff being charged with allegedly fabricated rule violations for which he was found not guilty following a disciplinary hearing.  Plaintiff was found guilty of possessing the two draft bags and punitively sanctioned.  *Id.*

The filing of lawsuits and administrative grievances is constitutionally protected activity for retaliation purposes.  *See Colon,* 58 F.3d at 872 ("Prisoners . . . have a constitutional right of access to the courts and to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercise of that right."); *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (the right of prisoners to file administrative grievances is a constitutionally protected activity for retaliation purposes).  Plaintiff's retaliation claim against Lane can be construed to include retaliation for his lawsuit and the grievance he filed, both constitutionally protected activity.  Therefore, the Complaint satisfies the first prong of a retaliation claim for pleading purposes.

Liberally construing Plaintiff's Complaint, it appears that Plaintiff has set forth a facially

---

[9]  *See* Dkt. No. 23-2 at p. 7.

plausible claim of adverse action satisfying the second prong. Plaintiff contends that the "motivating factor" behind Lane's initial rule violation charge against him with regard to the draft bags was finding out about Plaintiff's lawsuit. (Dkt. No. 27 at p. 4.) The filing of the charge led to Plaintiff being ordered to discard documents and legal materials by hearing officer Pawlin. *Id*. Destruction of a prisoner's legal papers and personal property has been found substantial enough to qualify as an adverse action for retaliation purposes. *See Smith v. City of New York*, No. 03 Civ. 7576(NRB), 2005 WL 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at *10 (S.D.N.Y. May 3, 2005) (Buchwald, J.) Because Plaintiff did have the two draft bags under his bunk, Lane's initial rule violation charge was arguably not a false misbehavior report. However, since Plaintiff claims that the bags were under the bunk with Lane's consent at the time he charged Plaintiff with the rule violation, the violation charge can be viewed as an adverse action for pleading purposes.

Placing Plaintiff in the SHU and filing false misbehavior claims against him after learning that he had filed a grievance based upon the directive also constitute adverse action sufficient to satisfy the second prong of a retaliation claim. *See Hamilton v. Fisher*, No. 9:10-CV-1066(MAD/RFT), 2012 WL 987374, at *14, 2012 U.S. Dist. LEXIS 39116, at *41 (N.D.N.Y. Feb. 29, 2012) (Treece, M.J.) (alleged transfer to SHU in retaliation for complaints could be considered adverse action); *Smith v. Hash*, No. 904-CV-0074 LEK/DRH, 2006 WL 2806464, at *6, 2006 U.S. Dist. LEXIS 70362 (N.D.N.Y. Sept. 28, 2006) (Kahn D.J., Homer, M.J.) (same); *Kotler v. Daby*, No. 10-CV-136 (TJM/DRH), 2011 WL 915312, *5, 2011 U.S. Dist. LEXIS 26173, at *14 (N.D.N.Y. Feb. 10, 2011) (Homer, M.J.) (both filing false misbehavior report and sending plaintiff to SHU for filing grievances and lawsuits constitute adverse actions); *Mateo v. Fischer*, 682 F. Supp.2d 423, 433 (S.D.N.Y. 2010) (filing false misbehavior report against

plaintiff constituted an adverse action for purposes of retaliation claim).

Plaintiff's Complaint also satisfies the third prong of the retaliation analysis – a causal connection between Plaintiff's lawsuit and grievance and the adverse actions by Lane. Although Lane was not himself the subject of Plaintiff's lawsuit, the temporal proximity between Lane's learning of the lawsuit against other correctional officers and charging Plaintiff with a rule violation makes a facially plausible showing of causation. Further, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in SHU and having an allegedly false misbehavior report filed against him supports causation for purposes of this motion. *See Baskerville,* 224 F. Supp. 2d at 732. In addition, Plaintiff was found not guilty with respect to the allegedly false misbehavior reports. *Id*.

For the foregoing reasons, I recommend that Defendant Lane's motion to dismiss Plaintiff's retaliation claim against him be denied.

2.   Retaliation Claim Against Defendant Pawlin

Plaintiff has also asserted a retaliation claim against Defendant Pawlin, the hearing officer who directed him to discard documents and legal materials. (Dkt. No. 27, at p. 4.) Plaintiff's Complaint does not adequately state a claim for retaliation against Defendant Pawlin. Plaintiff has not alleged that Pawlin was aware of the lawsuit Plaintiff had filed against correctional officers, nor is there any allegation that Pawlin was a defendant in that lawsuit. As a result, Plaintiff has failed to allege plausibly that the lawsuit was causally connected to Pawlin's allegedly adverse action. *See Wilson v. Kelly*, No. 9:11-cv-00030 (MAD/RFT), 2012 WL 3704996, at *9, 2012 U.S. Dist. LEXIS 121293, at *24 (Aug. 27, 2012) (D'Agostino, D.J., Treece, M.J.) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity

was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity). Therefore, I recommend that Plaintiff's retaliation claim against Defendant Pawlin be dismissed with leave to amend.

### 3. Retaliation Claim Against Defendant Beard

The Complaint does not allege that Defendant Beard was aware of the lawsuit that Plaintiff had filed against correctional officers. However, Plaintiff has alleged that when Defendant Lane learned that Plaintiff had filed a grievance with regard to storage of the draft bags in his cell, he began phoning Defendant Beard "and reporting to him the situation." (Dkt. No. 1 at ¶ 23.) The Court can reasonably infer from that allegation that Beard was aware that the grievance had been filed when he subsequently joined Lane in escorting the manacled Plaintiff out of his housing unit and taking him to SHU. *Id.* at ¶ 24. Placing Plaintiff in SHU constitutes an adverse action for purposes of the retaliation analysis. *See Hamilton*, 2012 WL 987374, at *14, 2012 U.S. Dist. LEXIS 39116, at *14 (putting Plaintiff in SHU for filing a grievance constitutes an adverse action). Furthermore, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in SHU supports causation for purposes of this motion. *See Baskerville,* 224 F. Supp. 2d at 732. Therefore, I recommend that Defendant Beard's motion to dismiss the Plaintiff's retaliation claim against him be denied.

### 4. Retaliation Claim Against Defendants Briggs and Tyndall

Destruction of Plaintiff's legal material and documents for his Second Circuit appeal constitutes an adverse action for purposes of the retaliation analysis. *See Smith v. City of New York,* 2005 WL 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at *10 (destruction of prisoner's legal papers and personal property qualifies as an adverse action for retaliation purposes). However,

Plaintiff has not alleged that either Briggs or Tyndall was involved in or even aware of Plaintiff's lawsuit or grievance at the time they are alleged to have emptied a container of melted ice into a bag filled with legal documents. Therefore, the Complaint does not make a facially plausible showing of causation against Briggs and Tyndall, and for that reason I recommend that Plaintiff's retaliation claim against those defendants be dismissed. Because Plaintiff may be able to correct the deficiency in an amended complaint, I recommend that he be granted leave to amend.

### 5. Retaliation Claim Against Defendant Moehs

The only factual allegations in Plaintiff's Complaint regarding Defendant Moehs are that he replaced Dr. Rosner as Plaintiff's health care provider, informed Plaintiff that he would not continue with the recommended course of treatment necessary to improve Plaintiff's medical condition or provide him with the recommended TENS unit, and told Plaintiff to live with the pain. (Dkt. No. 1 at ¶ 31.) In his opposition to Defendants' motion to dismiss, Plaintiff has asked the Court to infer that Defendant Moehs substituted himself for Dr. Rosner in order to disapprove the recommended course of treatment because Plaintiff had complained to the Chief Medical Officer about not receiving adequate medical care. (Dkt. No. 27 at p. 5.)

The Court finds that the allegations in Plaintiff's Complaint do not permit the inference Plaintiff has asked it to make. *See Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (retaliation claim must be "supported by specific and detailed factual allegations" and "not stated in wholly conclusory terms.") (citation and internal quotation marks omitted).

Plaintiff has failed to allege that Moehs had any knowledge of his complaint to the Chief Medical Officer when he denied Plaintiff the treatment recommended by the therapist, thus failing to satisfy the causal relationship prong of the retaliation analysis. *See Wilson*, 2012 WL 3704996,

20

at *9, 2012 U.S. Dist. LEXIS 12193, at *24. Plaintiff filed the grievance and made complaints to the Chief Medical Officer prior to his examination by Dr. Rosner and to the initial therapy sessions. *See Id.* at ¶¶ 30-31. There are no allegations in the Complaint suggesting that Moehs was the subject of the grievance or complaints or that he would otherwise have any reason to retaliate against Plaintiff by denying him necessary medical care.

In light of Plaintiff's failure to make a facially plausible showing of causal connection, I recommend that his retaliation claim against Defendant Moehs be dismissed. However, because Plaintiff's grievance and complaints to the Chief Medical Officer constitute constitutionally protected activity, and the denial of necessary medical treatment in retaliation for the filing of a grievance or making a complaint is sufficient to satisfy the adverse action requirement of the retaliation claim analysis, I recommend that Plaintiff be granted leave to amend should he be able to plead specific facts supporting causation.[10]

### E. Claims of Cruel and Inhuman Treatment and/or Medical Indifference Against Defendants Pawlin, Moehs, McAuliffe, Barkley, Hulihan, and Lindquist

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark

---

[10] *See Williams v. Fisher*, No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *10-11, 2003 U.S. Dist. LEXIS 16442, at **33-34 (S.D.N.Y. Sept. 18, 2003) (McKenna, J) (allegation that prison doctor revoked plaintiff's necessary medical treatment because he filed a grievance is sufficient for second prong of retaliation claim analysis).

the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement. Under the objective requirement, "the deprivation alleged must be objectively sufficiently serious[;] . . . a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834 (citations and internal quotation marks omitted). Under the subjective requirement, a plaintiff must demonstrate that a prison official acted with deliberate indifference to an inmate's health or safety. *Id*. In *Farmer*, the Supreme court found it "fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding the risk." *Id*. at 837.

In fulfilling their duty to "provide humane conditions of confinement," prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care. "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). There is no bright-line test to measure the seriousness of a prisoner's medical condition. *Stevens v. Goord*, 535 F. Supp.2d 373, 383 (S.D.N.Y. 2008). However, the Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case." *Smith,* 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996 )). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *See Farmer*, 511 U.S. at 825; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*,

429 U.S. at 105-6.

Prison officials can deprive inmates of medical treatment by unnecessarily delaying adequate medical treatment. *Smith,* 316 F.3d at 185. Where a plaintiff's claim is one of a temporary delay in the provision of otherwise adequate treatment, "it is appropriate to focus on the challenged delay ... in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Id.*

      1.      <u>Claim of Cruel and Inhuman Treatment By Defendant Pawlin</u>

Plaintiff has alleged that he suffered from lower back strain after being required to carry his personal belongings from SHU to his assigned housing unit. (Dkt. No. 1 at ¶ 28.) According to Plaintiff, Defendant Pawlin thereafter subjected him "to a pattern of harassing inter-facility movements . . . which required him to move his belongings to different housing units." (Dkt. No. 1 at ¶ 28.) "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Even if requiring Plaintiff to move his personal belongings to different housing units when he was suffering from lower back strain could pass as an "unnecessary and wanton infliction of pain . . . incompatible with the evolving standards of decency that mark the progress of a maturing society," *Estelle*, 429 U.S. at 102, Plaintiff has not alleged facts showing that Pawlin was aware of Plaintiff's back strain at the time he directed the moves, that Plaintiff complained to Pawlin about any impact the moves had on his back, or that Plaintiff suffered any

further harm to his back as a result of the moves to different housing units. Therefore, Plaintiff has failed to plead a facially plausible claim of deliberate indifference to Plaintiff's health or safety, and the Court recommends that Plaintiff's Eighth Amendment claim against Defendant Pawlin for cruel and inhuman treatment be dismissed, and that Plaintiff be given leave to amend.

2.    Claim of Medical Indifference Against Defendant Moehs

Plaintiff claims that the physical therapist who had worked with him had recommended that Plaintiff be given additional physical therapy sessions and a TENS unit for his lower back pain, and that Defendant Moehs refused to authorize both when he took over as Plaintiff's physician. (Dkt. No. 1 at ¶ 31.) An inmate's "mere disagreement over the proper treatment does not create a constitutional claim . . . [s]o long as the treatment given is adequate." *Chance*, 143 F.3d at 703. Construing Plaintiff's complaint liberally, as is required in light of his *pro se* status, and accepting the allegations as true, Plaintiff claims that Moehs not only rejected the treatment recommended by the therapist, but that he declined to provide any treatment at all to address Plaintiff's excruciating back pain, telling him instead to learn to live with the pain. (Dkt. No. 1 at ¶ 31.)

Plaintiff has described himself as having "excruciating lower back pain" over an extended period of time. (Dkt. No. 1 at ¶¶ 27, 35-36.) Severe back pain, especially if it lasts for an extended period of time, as Plaintiff claims, can constitute a "serious medical need" under the Eighth Amendment, there by satisfying the first element of a medical indifference claim.[11] *See Guarneri*

---

[11] Dental conditions left untreated for a significant period of time can also constitute a serious medical need under the Eighth Amendment. *See, e.g., Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity which will degenerate with increasingly serious implications if neglected over sufficient time presents a serious medical need); *Chance*, 143 F.3d at 702 (untreated dental problems resulting in chronic tooth pain for six months resulting in tooth degeneration constitute serious medical needs); *see also Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984) (claim based on plaintiff's inability to eat properly due to dental problems).

*v. Hazzard,* No. 9:06-CV-0985, 2008 WL 552872, at *6, 2008 U.S. Dist. LEXIS 14809 (Feb. 27, 2008) (Mordue, C.J., Homer, M.J.) ( citing *Nelson v. Rodas,* No. 01 Civ. 7887 (RCC) (AJP), 2002 WL 31075804, at *14, 2002 U.S. Dist. LEXIS 17359, at *50 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (collecting cases)).  Given Plaintiff's alleged level of back pain and the length of time over which it lasted, Moehs' refusal to allow him to follow through with the recommended therapy and allow Plaintiff a TENS unit, compounded by his alleged failure to prescribe any treatment whatsoever to address Plaintiff's back condition and pain, constitutes a facially sufficient claim of deliberate indifference for purposes of Plaintiff's 12(b)(6) motion.[12]  Therefore, the Court recommends that Defendant Moehs' motion to dismiss Plaintiff's Eighth Amendment medical indifference claim against him be denied.

### 3.  Claim of Medical Indifference Against Defendants McAuliffe and Bezio Regarding Medical and Dental Care to Inmates in SHU

Plaintiff has alleged that on two separate occasions when he in SHU he was not allowed to attend scheduled dental and medical appointments because of a routine practice denying inmates in SHU reasonable adequate dental and medical care.  (Dkt. No. 1 at ¶¶ 27 and 29.)  The basis for Plaintiff's Eighth Amendment medical indifference claim against Defendants McAuliffe and Bezio is that they "were cognizant of this routine practice, and/or have knowingly implemented or allowed the implementation of the practice of denying prisoners confined in the SHU reasonable adequate dental and medical care."  *Id.* at ¶ 27.  The dental appointment Plaintiff missed was for

---

[12]  If it turns out that Defendant Moehs did provide Plaintiff with some course of treatment for his back, albeit not the treatment recommended by the therapist or the treatment Plaintiff would have chosen for himself, and did not merely tell Plaintiff to live with the pain as alleged, Plaintiff's medical indifference claim is unlikely to survive a motion for summary judgment.

"troubling wisdom teeth," which were painful and one of which was ultimately extracted after Plaintiff filed a grievance. *Id*. at ¶ 30. The medical appointment was for Plaintiff's chronic lower back problem that left him with excruciating pain. Id. at ¶ 27.

In a § 1983 action against a defendant in his or her individual capacity, the plaintiff must establish that the defendant, acting under color of state law, caused the plaintiff to be deprived of a federal right. *Kentucky v. Graham*, 473 U.S. at 166. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). The United States Supreme Court has made it clear that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) ("*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions; holding a position in a hierarchical chain of command is insufficient by itself to support personal involvement").

However, the Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where the supervisor has: "(1) participated directly in the alleged constitutional violation, (2) failed to remedy a violation after learning of it through a report or appeal,[13] (3) created a policy or custom under which unconstitutional practices occurred, or

---

[13] There are no allegations in the Complaint that McAuliffe and Bezio had direct knowledge that Plaintiff had a serious medical need while he was in SHU and nonetheless refused to allow him to keep his dentist and medical appointments. *See Farmer*, 511 U.S. at 825,

allowed the continuance of such a policy or custom, (4) was grossly negligent in managing subordinates who committed constitutional violations, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[14]

Under *Colon*, if McAuliffe and Bezio, acting in a supervisory capacity, either created a policy resulting in violation of an inmate's Eighth Amendment rights, or allowed the continuation of such a policy, they could be subject to liability under 42 U.S.C. § 1983. In this case, however, under even the most liberal reading of Plaintiff's Complaint, he has not alleged any facts to support such a claim. The Complaint is devoid of any factual enhancement of his conclusory assertion that McAuliffe and Bezio were aware of the allegedly routine practice, were involved in implementing it, or that they had authority to stop the practice of denying SHU prisoners "reasonable adequate dental and medical care" and allowed it to continue. *Id.* at ¶ 30. *See Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement [do] not suffice" to state a claim) (internal quotation marks omitted). Therefore, the Court recommends that Defendants McAuliffe and Bezio's motion to dismiss Plaintiff's Eight Amendment medical indifference claim against them be granted with leave granted Plaintiff to amend.

---

837 (deliberate indifference requires defendant's awareness of facts from which he or she could draw an inference that plaintiff had a serious medical need, that inference was actually made, and that defendant consciously and intentionally disregarded or ignored the need).

[14] The Supreme Court's decision in *Ashcroft,* 556 U.S. 662 has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of these motions that *Colon* remains good law.

4.       Claim of Indifference to Serious Medical Needs Against Defendants
         Barkley, Hulihan, and Lindquist

Plaintiff identifies Defendants Barkley and Hulihan as superintendents of correctional

facilities and Defendant Lindquist as a grievance appeal officer.  (Dkt. No. 1 at ¶¶ 14 and 16.)

Plaintiff has alleged that while he was in SHU at Mid-State, he continued to experience

excruciating back pains and a painful wisdom tooth and requested and was denied treatment by

Defendant Dr. John Doe based upon Defendant Moehs' medical notation entry.  *Id*. at ¶ 35.

According to Plaintiff, the only dental or medical care he received while in SHU at Mid-State was

dental x-rays.  *Id*.  Plaintiff has alleged in conclusory fashion that he made detailed and articulate

complaints to Defendants Barkley, Hulihan, and Lindquist about being deprived of necessary and

adequate medical and dental care at Mid-State, that the complaints were denied as unsubstantiated,

and that no significant steps were taken to ensure that care was given during the time period he was

at Mid-State prior to his transfer to Downstate.  (Dkt. No. 1 at ¶ 36.)

Supervisory personnel may be held liable under § 1983 for "fail[ure] to remedy a violation

after learning of it through a report or appeal."  *Colon,* 58 F.3d at 873. However, mere receipt of a

report or complaint or request for an investigation by a prison official is insufficient to hold the

official liable for the alleged constitutional violations.  *See, e.g., Johnson v. Wright*, 234 F. Supp.

2d 352, 363 (S.D.N.Y. 2002) (claim that official ignored prisoner's letter of protest not enough to

hold official liable);  *Walker v. Pataro*, No. 99 Civ. 4607 (GBD)(AJP), 2002 WL 664040, at *12,

2002 U.S. Dist. LEXIS 7067, at *43 (S.D.N.Y. Apr. 23, 2002) (Peck, M.J.) ("[I]f mere receipt of a

letter or similar complaint were enough, without more, to constitute personal involvement, it would

result in liability merely for being a supervisor, which is contrary to black-letter law that 1983 does not impose *respondeat superior* liability.").

"On the other hand, where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second *Colon* prong: the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." *Walker,* 2002 WL 664040, at *13, 2002 U.S. Dist. LEXIS 7067, at *44 (citations and internal quotation marks omitted) (in denying superintendent's motion for summary judgment the court noted that responses to grievances or other inmate complaints "which attempt to defend or explain alleged constitutional violations have been found sufficient to sustain a plaintiff's claim of personal involvement."); *see also Johnson,* 234 F. Supp. 2d at 363 ("personal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint.").

Allegations of awareness on the part of a correctional facility superintendent of an ongoing failure by prison officials to provide a plaintiff with medical treatment for injuries, coupled with failure to remedy the wrong after learning of it through a grievance procedure have been found to be sufficient to survive a Rule 12(b)(6) motion. *See Cicio v. Graham*, No. 9:08-CV-534, 2009 WL 537534, at *7, 2009 U.S. Dist. LEXIS 16675 (N.D.N.Y. Mar. 3, 2009) (Mordue, C.J.) (Peebles, M.J.). However, the naked assertion in Plaintiff's Complaint that he complained to Defendants Barkley, Hulihan, and Lindquist that he was being deprived of reasonable and adequate dental care, and that his complaints were found unsubstantiated is simply too lacking in factual detail to show that Plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 678 (Rule 8(a)(2) "demands more than an

unadorned, the defendant-harmed-me accusation.")  Plaintiff's Complaint contains absolutely no factual enhancement regarding the manner in which complaints were conveyed to each of the defendants, the content of the complaints, the timing of the complaints, or the responses of each of those Defendants to those complaints.  Therefore, I recommend that Defendants Barkley, Hulihan, and Lindquist's motion to dismiss Plaintiff's Eighth Amendment  medical indifference claim against them be granted and that Plaintiff be granted leave to amend.

G.     **Claims for Denial of Due Process Against Defendants Lane, Beard, Jones, McAuliffe, and Bezio**

To make out a Section 1983 claim for denial of Fourteenth Amendment due process rights, a plaintiff must demonstrate: "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted).  As to the first prong, an inmate can show deprivation of a liberty interest under the due process clause when a prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandlin v. Conner*, 515 U.S. 472, 484 (1995).  As to the second prong, the minimal due process requirements include: "(a) written notice of the claimed violations . . . ; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . .; and (f) a written statement by the fact finders as to the evidence relied on . . . ."  *Wolff v. McDonald*, 418 U.S. 539, 559 (1974).

1.      Due Process Claim Arising Out of Misbehavior Reports Involving Plaintiff's
        Draft Bags

Plaintiff has asserted a claim for denial of his due process rights under the Fourteenth

Amendment against Defendants Lane, Beard, McAuliffe[15] and Jones arising out of the institution,

execution, and enforcement of a disciplinary proceeding against him based upon fabricated

allegations and in violation of the state-wide directive allowing inmates to store two draft bags of

personal possessions in their cells on a temporary basis.  (Dkt. No. 1 at ¶¶ 47-48.)   Construing

Plaintiff's Complaint liberally, Defendants Lane and Beard are accused of filing fabricated charges

and a draft bag possession charge against him.  Defendant Jones was the hearing officer on the

charges and ruled in favor of Plaintiff on the allegedly fabricated charges but found him guilty on

the draft bags possession charge in violation of the state-wide directive.  *Id.* at ¶ 28.

The Court's initial inquiry is whether Plaintiff has pleaded facts supporting a facially

plausible claim that a liberty interest was infringed by the false charges and hearing determination

since Plaintiff had no right to due process unless a liberty interest was infringed.  *Palmer* v.

*Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  In his Complaint, Plaintiff has alleged he was punitively

confined to SHU by Jones.[16]  (Dkt. No. 1 at ¶ 29.)  Plaintiff claims that he was in SHU for a few

weeks.  *Id.*  While he was unable to attend dental and medical appointments while he was in SHU,

_____

[15]  Although Plaintiff has asserted a due process claim against Defendant McAuliffe in
connection with the misbehavior report filed by Lane and Beard that resulted in the imposition of
punitive sanctions by Defendant Jones, there are no factual allegations in the Complaint
connecting Defendant McAuliffe to that claim.

[16]  The Court has inferred that the SHU sanction was imposed by Jones as a result of the
guilty determination on the draft bag possession charge.

Plaintiff has described it as a routine practice rather than an atypical occurrence. *Id*. at ¶ 27. *See Palmer*, 364 F.3d at 64 (both duration and conditions are considered in determining whether SHU confinement rises to the level of "atypical and severe hardship"). The alleged violation of the state-wide DOCCS storage directive by Defendants Lane, Beard, and Jones help Plaintiff because failure to follow a DOCCS directive does not give rise to a Section 1983 claim. *See Cabassa v. Gummerson*, No. 9:01-CV-1039, 2008 WL 4416411, *6, n. 24, 2008 U.S. Dist. LEXIS 72975, at *6, n. 24 (N.D.N.Y. Sept. 24, 2008) (Hurd, D.J.) (violation of a DOCCS directive does not give plaintiff a claim under 42 U.S.C. ¶ 1983).

Because the Plaintiff has failed to allege a liberty interest, it is not necessary to reach the issue of whether he was provided sufficient process in the hearing on the allegedly fabricated charges.[17] Therefore, the Court recommends that Defendants Lane, Beard, and Jones' motion to dismiss Plaintiff's Fourteenth Amendment due process claim be granted with leave to Plaintiff to amend.

2.  Due Process Claim Against McAuliffe and Bezio Arising Out of Plaintiff's Alleged Denial of a Fair and Impartial Hearing

Plaintiff has also asserted a due process claim against Defendants McAuliffe and Bezio in connection with his disciplinary hearing in front of McAuliffe. Plaintiff's due process claim against McAuliffe arises out of his denial of Plaintiff's request for access to documentary evidence needed to defend himself in a disciplinary hearing, his deliberate and purposeful misrepresentation to Plaintiff, and his denial of a fair and impartial disciplinary hearing. His claim against Bezio

---

[17] The Court has recommended that Defendants Lane and Beard's motion to dismiss Plaintiff's retaliation claim arising out of the allegedly false misbehavior report be denied. *See Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (filing of a false misbehavior report may be actionable when made in retaliation for the exercise of constitutional rights).

arises out of Bezio's affirmance of McAuliffe's determination of guilt. (Dkt. No. 1 *at* ¶ 49.) Plaintiff was placed in SHU for six months, with a concomitant loss of all privileges and good time credit, which extended his sentence to the maximum, as a result of the guilty finding. *Id.* at ¶ 33.

The Supreme Court ruled in *Sandlin* that the Constitution did not require that restrictive confinement be preceded by a hearing providing procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. The Second Circuit considers the duration of SHU confinement as well as the severity of the conditions. *See Palmer*, 364 F.3d at 65. Although no bright-line rule establishes a period of SHU confinement beyond which a due process right is implicated, *id*. at 64, the Second Circuit has held that a 101 day confinement does not alone meet the *Sandlin* standard of atypicality. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005) (citing *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)). A liberty interest has, on the other hand, been found to be infringed by a confinement of 305 days. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

SHU confinement of less than 101 days can constitute atypical and significant hardships if the conditions were more severe than normal SHU conditions or "a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65 (citing *Ortiz*, 323 F.3d at 195 & n.1 and *Colon*, 215 F.3d at 232 & n.1) In *Palmer*, the Second Circuit explained "[w]here the plaintiff was confined [in SHU] for an intermediate duration – between 101 and 305 days – development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required [to determine whether a prisoner's liberty interest has been infringed]." 364 F.3d at 64-65.

34

Plaintiff's allegations of a 180 day confinement in SHU with no medical care for an excruciatingly painful back and painful wisdom tooth is sufficient to satisfy the atypical conditions requirement for a liberty interest for pleading purposes. Plaintiff has also asserted facts adequate to satisfy the pleading requirements for a denial of due process in his disciplinary hearing. "Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 496 (1985). Plaintiff has alleged that McAuliffe twice denied his request for documents relevant to his defense.

Prisoners also have a constitutional right to a fair and impartial hearing officer. *See, e.g., Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Plaintiff claims that McAuliffe made false representations to him to induce him to enter into an involuntary plea. While Plaintiff's due process claim against McAuliffe may not survive a motion for summary judgment, the allegations in the Complaint are adequate to assert a facially plausible claim of denial of due process.

Plaintiff has also alleged facts adequate to state a claim against Defendant Bezio for denial of due process in affirming the hearing determination. According to Plaintiff, in his appeal, he informed Bezio that he had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced, and that he was denied due process and equal protection. (Dkt. No. 1 at ¶ 34.) It appears from the Complaint that Bezio affirmed the hearing determination while Plaintiff was still in SHU, and that as a result of the affirmance, Plaintiff ended up serving the full 180 day SHU confinement and the maximum of his original sentence. *Id*. Personal involvement of a supervisory official may be shown by evidence that after learning of the violation of a prisoner's rights through an appeal, he failed to remedy the wrong. *Colon*, 58 F.3d at 873.

The consequences of McAuliffe's alleged violation of Plaintiff's due process rights –

Plaintiff's confinement in SHU and loss of good time –  were ongoing at the time Bezio affirmed

the hearing determination.  *Id*. at 34.  Bezio therefore had the opportunity to remedy the violation

at least to some degree and failed to do so, thereby leaving him potentially subject to personal

liability.  *See Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (finding personal involvement

where superintendent denied appeal from hearing that allegedly violated plaintiff's rights);

*Delgado v. Bezio*, No. 09 Civ. 6899(LTS), 2011 WL 1842294, at *8, 2011 U.S. Dist. LEXIS

51917, at *25-26 (S.D.N.Y. May 9, 2011) (Swain, D.J.) (denying motion to dismiss claim against

official who heard appeal from disciplinary hearing); *Johnson v. Coombe*, 156 F. Supp.2d 273, 278

(S.D.N.Y. 2001) (denying appeal officer's motion to dismiss because prisoner alleged he had been

denied the opportunity to call a witness at disciplinary hearing);  *Moore v. Scully*, No. 90 Civ 3817

(MEL), 1993 WL 22129, at *3, 1993 U.S. Dist. LEXIS 841, at *10-11 (S.D.N.Y. Jan. 26, 1993)

Laker, D.J.) (denying summary judgment where superintendent denied affirmed disciplinary

hearing result where plaintiff alleged that hearing denied due process).

Based upon the foregoing, the Court recommends that Defendant Bezio's motion to dismiss

Plaintiff's Fourteenth Amendment due process claim be denied.

### H.    Plaintiff's Pendent State Claims

Plaintiff has asserted three distinct claims for relief under New York State law against

Defendants for acts or omissions within the scope of their employment.  (Dkt. No. 1 at ¶¶ 51-55.)

They are: (1) *respondeat superior* claims against Defendants Lindquist, Barkley, and Hulihan for

negligence in performing their administrative duty to supervise their subordinates' work

performance as it related to Plaintiff's care and treatment, *Id*. at ¶ 51; (2) claims against Defendants

Lane, Beard, Jones, McAuliffe, and Bezio for wrongful confinement and deprivation of Plaintiff's

liberty interest by denying him the right to offer relevant documentary evidence for the preparation

and presentation of his defense in a disciplinary proceeding in violation of New York State Rules

and Regulations and DOCCS policy directives, *Id.* at ¶¶ 52-53; and (3) negligence and malfeasance

in providing Plaintiff medical and dental care.  Defendants argue that Plaintiff's state law claims

should be dismissed pursuant to New York Correction Law § 24. (Dkt. No. 23-1 at pp. 20-22.)

Defendants are correct.  Section 24 provides as follows:

> 1.  No civil action shall be brought in any court of the state, except
> by the attorney general on behalf of the state, against any officer or
> employee of the department, in his personal capacity, for damages
> arising out of any act done or the failure to perform any act within
> the scope of the employment and in the discharge of the duties by
> such officer or employee.
>
> 2.  Any claim for damages arising out of any act done or the failure
> to perform any act within the scope of the employment and in the
> duties of any officer or employee of the department shall be
> brought and maintained in the court of claims as a claim against the
> state.

This statute precludes inmates from suing DOCCS employees in their personal capacity in

New York State courts.  *See Arteaga v. State*, 532 N.Y.S.2d 57, 62 (1988).  The statutory bar is

intended to permit correction officers to perform the task of maintaining safety and security in

correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could

substantially impair the effective performance of a discretionary function."  *Ierardi v. Sisco*, 119

F.3d 183, 187 (2d Cir. 1997).  The bar also applies to pendent state law claims in federal court

because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law

to the state claim."  *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir.1996) (citations omitted).  "If a state

would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* at 15.

In 2009, the United States Supreme Court held Correction Law § 24 unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown*, 556 U.S.729 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Correction Law § 24. *See O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH), 2012 WL 987726, at *21, 2012 U.S. Dist. LEXIS 39232, at *60 (N.D.N.Y. Feb. 28, 2012) (Homer, M.J.); *Joy v. New York*, No. 5:09-CV-841 (FJS/ATB), 2010 WL 3909694, at *4-5, 2010 U.S. Dist. LEXIS 104641, at *15-16 (N.D.N.Y. Sept. 30, 2010) (Scullin, S.D.J.); *Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 WL 4905240, at *16, 2010 U.S. Dist. LEXIS 124737, at *47-48 (N.D.N.Y. Sept. 29, 2010) (Lowe, M.J.); *Crump v. Ekpe,* No. 9:07-CV-1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *61 (N.D.N.Y. Feb. 8, 2010) (Kahn, D.J., Peebles, M.J.). For the reasons set forth in those decisions, I recommend that Defendants' motion to dismiss Plaintiff's pendent state law claims in this case be granted, without leave to amend.

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 23) be **<u>GRANTED IN PART AND DENIED IN PART</u>**. Specifically, the Court recommends that Defendants' motion be **<u>GRANTED</u>** as follows:

1. Dismissal on Eleventh Amendment grounds of all claims seeking money damages against the moving Defendants in their official capacities, without leave to amend;

2. Dismissal of all of Plaintiff's state law claims against Defendants Lindquist, Barkley, Hulihan, Lane, Beard, Jones, Moehs, McAuliffe, and Bezio (Dkt. No. 1, Counts XV-XIX), without leave to amend; and

3. Dismissal of the following claims, with leave to amend: (a) First Amendment claim against Defendants Briggs and Tyndall for denial of access to courts; (b) First Amendment retaliation claims against Defendants Pawlin, Briggs, Tyndall, and Moehs; (c) Eighth Amendment claim of cruel and inhuman treatment against Defendant Pawlin; (d) Eighth Amendment claim for indifference to serious medical needs against McAuliffe, Bezio, Barkley, Hulihan, and Lindquist; and (e) Fourteenth Amendment denial of due process claims against Defendants Lane, Beard, and Jones; and it is further

**RECOMMENDED** that Defendants' motion be **<u>DENIED</u>** as to the following: (a) Plaintiff's claim for retaliation against Defendants Lane and Beard; (b) Plaintiff's Eighth Amendment medical indifference claim against Defendant Moehs; and (c) Plaintiff's Fourteenth Amendment violation of due process claim against Defendants McAuliffe and Bezio; and it is further

**RECOMMENDED** that Defendants be directed to answer those allegations in the Plaintiff's Complaint that relate to the claims on which dismissal is denied and those which relate to the Doe Defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 24, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge