UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PHILLIP JEAN-LAURENT,

                            Plaintiff,

                                                    9:11-CV-186
v.                                                  (NAM/TWD)

C.O. LANE; C.O. BRIGGS; C.O. TYNDALL; JOHN
DOE #1; JOHN DOE #2; SGT. BEARD; SGT.
PAWLIN; LT. JONES; DSS McAULIFFE; DR.
MOEHS; DR. JOHN DOE; JANE DOE; SUPT.
BARKLEY; SUPT. HULIHAN; DEP. COMM.
LINDQUIST; NORMAN BEZIO,

                            Defendants.

_____

APPEARANCES:                            OF COUNSEL:

PHILLIP JEAN-LAURENT
Plaintiff *pro se*
P.O. Box 200016
Ozone Park, NY 11420-0016

HON. ERIC T. SCHNEIDERMAN            GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### REPORT-RECOMMENDATION AND ORDER

        Plaintiff's Amended Complaint (Dkt. No. 46) in this *pro se* prisoners civil rights action,

commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and

Recommendation by the Honorable Norman A. Mordue, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c). In his original Complaint, Plaintiff Phillip Jean-Laurent, a former inmate of the New York Department of Corrections and Community Supervision ("DOCCS"), asserted claims for denial of access to court and retaliation in violation of his First Amendment rights; cruel and unusual punishment and indifference to serious medical and dental conditions in violation of his Eighth Amendment rights; and denial of due process in violation of his Fourteenth Amendment rights. (Dkt. No. 1.)

Defendants, with the exception of the four Doe Defendants, whom it appears have yet to be identified and served, moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) The motion was referred to this Court for Report-Recommendation (Dkt. No. 28), and the Court recommended granting the motion in part and denying the motion in part. (Dkt. No. 31.) The Report-Recommendation was adopted in its entirety by Judge Mordue. (Dkt. No. 32.)

Defendants' motion to dismiss was denied as to Plaintiff's: (1) retaliation claims against DOCCS Defendants Corrections Officer Patrick Lane ("Lane") and Corrections Sergeant Matthew Beard ("Beard"); (2) medical indifference claim against DOCCS physician Defendant Dr. Charles Moehs ("Moehs"), and (3) due process claims against DOCCS Defendants Deputy Superintendent/Security Brian McAuliffe ("McAuliffe") and Norman Bezio ("Bezio"). (Dkt. No. 31 at 39.) Those claims remain pending. Plaintiff's official capacity claims and state law claims were dismissed with prejudice as to all of the Defendants.[1] *Id.* Plaintiff's remaining

---

[1] Plaintiff asserted state law claims: (1) against Defendants Lindquist, Barkley, and Hulihan for negligence in the performance of their duty to supervise their subordinate's work as it related to Plaintiff's care and treatment; (2) against Defendants Lane, Beard, Jones, McAuliffe,

claims were dismissed with leave to amend.  *Id.*

The matter is currently before the Court for screening of Plaintiff's Amended Complaint (Dkt. No. 46.)  For the reasons discussed below, I recommend that the Amended Complaint be dismissed in part pursuant to 28 U.S.C. § 1915(e), and that the District Court require Defendants to respond to the remaining claims in the Amended Complaint.

## I.    FACTUAL AND PROCEDURAL SUMMARY

### A.    Allegations in Plaintiff's Original Complaint[2]

#### 1.    Retaliation by Defendants Lane, Beard, and Pawlin

When Plaintiff was transferred to Cape Vincent Correctional Facility ("Cape Vincent") in January of 2008, Defendant Lane allowed him to store temporarily two draft bags of personal legal documents and materials and books under his bed even though, according to Lane, Plaintiff was required to store them in plastic storage containers that could be purchased in the commissary.  (Dkt. No. 1 at ¶¶ 18-20.)  Lane continued to allow storage in the draft bags while Plaintiff awaited funds from home to pay for the storage containers until learning that Plaintiff was litigating an action against other corrections officers.  At that point, Lane filed a misbehavior report against Plaintiff for possessing the two draft bags in his living quarters.  *Id.* at ¶¶ 21-22.

and Bezio for wrongful confinement and denying him the right to offer relevant documentary evidence at his disciplinary hearing in violation of New York States Rules and Regulations and DOCCS policy directives; and (3) negligence and malfeasance in providing Plaintiff dental care. (Dkt. No. 1 at ¶¶ 51-55.)

[2] Familiarity with the Court's Report-Recommendation on Defendants' Rule 12(b)(6) motion, which included both a detailed recitation of the facts in Plaintiff's Complaint and an analysis of relevant law, is presumed, and only a summary of the relevant facts and the legal analysis necessary for the initial review of Plaintiff's Amended Complaint is included herein. (*See* Dkt. No.  31.)

Defendant Corrections Sergeant David Pawlin ("Pawlin"), the hearing officer, directed Plaintiff to discard several hundred pages of legal materials and documents essential to pending litigation. *Id.* at ¶ 22.

Plaintiff subsequently learned of a state-wide policy directive he believed permitted him to use the draft bags for storage and filed a grievance. *Id*. at ¶¶ 23-24. When Lane learned of the grievance, he informed Defendant Beard ("Beard"), and after Lane directed Plaintiff to turn over the bags, Lane and Beard manacled Plaintiff and took him to the Special Housing Unit ("SHU"). *Id*. at 24. At a subsequent disciplinary hearing, Defendant Jones, the hearing officer, found Plaintiff not guilty of fabricated violations but guilty of possessing the draft bags.[3] Jones imposed punitive sanctions. *Id*. at 26.

2.     Denial of Access to Courts by Defendants Allen Briggs and Seth Tyndall

According to Plaintiff, when Defendant Corrections Officers Allen Briggs ("Briggs") and Seth Tyndall ("Tyndall") packed his belongings after he was taken to SHU, they deliberately emptied a container of melted ice into a bag filled with legal materials and documents essential to Plaintiff's appeal in an unidentified case pending in the Second Circuit Court of Appeals. *Id*. at ¶ 25. The Second Circuit had granted an extension to file a petition for rehearing or rehearing *en banc*, and because the documents were destroyed he was unable to file the petition in a timely manner. *Id*.

---

[3] Plaintiff did not identify the nature of the allegedly fabricated rule violations in his Complaint. (*See* Dkt. No. 46.) It is unclear why, as Plaintiff seems to allege in his Amended Complaint, there were hearings before both Pawlin and Jones with respect to the same draft bag infraction. *See*, *id.* at ¶¶ 24-25, 30.

3.    <u>Denial of Due Process by Lane, Beard, and Jones and McAuliffe</u>

In this original Complaint, Plaintiff claimed that Defendants Lane, Beard, Jones, and McAuliffe were guilty of "instituting, executing and enforcing a punitive disciplinary proceeding against plaintiff based upon known fabricated allegations of prison violations, and in violation of the Department's state-wide institutional directive policy." (Dkt. No. 1 at ¶ 48.) The claim was based upon Lane and Beard's filing of a misbehavior report with regard to Plaintiff's storage of the two draft bags and other unidentified charges, and Jones' determination of guilt and imposition of punitive sanctions. *Id*. at 26.

4.    <u>Cruel and Unusual Punishment by Defendants John Doe #1, John Doe # 2, and Pawlin</u>

On one occasion when Plaintiff was released from SHU, he was forced to carry his belongings, including at least eight draft bags weighing eighty or more pounds, to his assigned housing unit over four-hundred yards away, in snowy frigid weather. He was not allowed to use an available pushcart or have another inmate assist him despite informing Defendant John Doe #1 of his lower back problem and level of pain. *Id*. at ¶ 28. Another time, after serving several weeks in SHU, Plaintiff was again required to carry all of his personal belongings without a pushcart or assistance, this time after telling Defendant John Doe #2 about his back problem and pain. *Id*. ¶ 29. Plaintiff hurt his back, and when he reported to sick call, Defendant Jane Doe would not do anything for him and would not give him a medical excuse from carrying his personal goods. *Id*.

According to Plaintiff, after the first incident, Defendant Pawlin subjected him to a

pattern of harassing inter-facility moves that required Plaintiff to move his belongings to different housing units.

          5.      <u>Indifference to Plaintiff's Serious Medical Needs by Defendants McAuliffe and Deputy Superintendent Warren Barkley</u>

Prior to Plaintiff's SHU confinement, he had been scheduled for oral surgery and medical treatment for chronic low back pain. *Id*. at ¶ 27. He was not allowed to keep his appointments because he was confined in SHU and was left to endure "unbearable toothaches, extreme eating and hygienical discomfort, as well as excruciating lower back pain during and after his SHU confinement." *Id*. Once Plaintiff was released from SHU, he had to restart the lengthy procedure of rescheduling the medical and dental appointments. *Id*. Plaintiff contends that Defendants McAuliffe and Warren Barkley ("Barkley") were cognizant of the routine practice of denying prisoners in SHU reasonable and adequate dental care and/or knowingly implemented or allowed the practice. *Id.*

          6.      <u>Moeh's Indifference to Plaintiff's Serious Medical Needs</u>

Approximately four months after filing a grievance and seeking redress from the DOCCS Chief Medical Officer, Plaintiff was examined by Dr. Rosner and finally had one wisdom tooth out and received a few physical therapy sessions. Id. at ¶30. After the therapy sessions, the therapist indicated Plaintiff needed additional therapy and also gave him a TENS unit for self-administered pain therapy. *Id*. at ¶ 31. At a follow up appointment, Moehs had replaced Dr. Rosner and told Plaintiff he would not continue with the recommended course of treatment or the TENS unit, and Plaintiff would have to learn to live with the pain. *Id.*

### 7. Denial of Due Process by McAuliffe and Bezio

Defendant McAuliffe denied Plaintiff's request to obtain documentary evidence Plaintiff believed was necessary and relevant to his defense in an August 2008, disciplinary hearing involving an altercation with another inmate, over which McAuliffe was presiding. *Id*. at ¶ 32. According to Plaintiff, McAuliffe made false representations that led him to enter into an involuntary and unintelligent plea agreement. *Id*. As a result, Plaintiff was given punitive segregation for six months at Mid-State Correctional Facility ("Mid-State") with a loss of privileges, while the other inmate was not sanctioned at all. *Id*. at ¶¶ 32-33. Defendant Bezio affirmed McAuliffe's determination. *Id*. at ¶ 34.

### 8. Indifference to Plaintiff's Serious Medical Needs by Barkley, Mid-State Superintendent William Hulihan ("Hulihan"), and DOCCS Deputy Commissioner Christopher Lindquist ("Lindquist")

Plaintiff continued to experience excruciating back pain and toothaches while at Cape Vincent and Mid-State. *Id*. at ¶ 35. Defendant Dr. John Doe denied Plaintiff treatment without any physical examination based upon Moeh's medical entry. *Id*. Although Plaintiff had dental x-rays after grieving the matter to Defendant Hulihan, his painful wisdom tooth was not extracted. *Id*. Despite making detailed, articulate complaints to Defendants Barkley, Hulihan, and Lindquist, Plaintiff's complaints were denied as unsubstantiated and no significant steps were taken to ensure he received adequate medical and dental care at Cape Vincent and Mid-State prior to his transfer to Downstate Correctional Facility. *Id*.

**B. Claims Dismissed with Leave to Amend on Defendants' Rule 12(b)(6) Motion**

The following § 1983 claims in Plaintiff's original Complaint were dismissed on

Defendants' Rule 12(b)(6) motion with leave to amend:

1. First Amendment claims against Defendants Briggs and Tyndall for denial of access to courts and retaliation;[4]

2. First Amendment retaliation claims against Defendants Pawlin and Moehs;

3. Eighth Amendment claim for cruel and unusual punishment by Defendant Pawlin;

4. Eighth Amendment claim for medical indifference against Defendants McAuliffe, Barkley, Hulihan, and Lindquist; and

5. Fourteenth Amendment claims for denial of due process against Defendants Lane, Beard, and Jones.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

---

[4] Plaintiff has not included amended retaliation claims against Defendants Briggs and Tyndall in his Amended Complaint. (Dkt. No. 46.)

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without

giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[5] *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    ANALYSIS OF PLAINTIFF'S AMENDED CLAIMS

### A.    First Amendment Claim for Denial of Access to Courts

Plaintiff's First Amendment claim against Defendants Briggs and Tyndall for denial of access to court in his original Complaint was dismissed for failure to state a claim because Plaintiff failed to provide any information regarding the matter in the Second Circuit in which he was allegedly prevented from filing a petition for rehearing or *en banc* consideration. (Dkt. No. 31 at 13-14.) *See Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002) (plaintiff must describe the underlying cause of action allegedly frustrated by the interference and lost remedy well enough to establish that it is "nonfrivolous" and "arguable" in nature); *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (to show actual injury "plaintiff must demonstrate that the defendant's conduct frustrated plaintiff's efforts to pursue a nonfrivolous claim.").

In his Amended Complaint, Plaintiff described the matter on appeal in the Second Circuit as one involving a § 1983 claim against employees of the Administration for Children's Services for petitioning the New York State Family Court to remove his children from their household because Plaintiff would not submit to a urine analysis absent a search warrant. (Dkt. No. 46 at

---

[5] The Amended Complaint now before the Court for screening was filed in response to the District Court's grant of leave to amend certain of the claims dismissed on Defendants' Rule 12(b)(6) motion. (Dkt. Nos. 31 at 39; 32 at 2.)

¶ 28.)  Plaintiff has alleged that the district court dismissed the complaint for lack of subject

matter jurisdiction under an erroneous application of the *Rooker-Feldman* doctrine.[6]  *Id*. at ¶ 29.

The Court has taken judicial notice of documents filed in *Jean-Laurent v. Stewart*, No.

1:05-CV-3323 (RJD), in the Eastern District of New York, and court records on Plaintiff's

appeal to the Second Circuit, No. 07-3428-pr.[7]  Plaintiff's complaint in *Jean-Laurent v. Stewart*

arose out of a child neglect proceeding in Queens County Family Court that was initiated as a

result of Plaintiff's refusal to submit to a urine test requested by case workers investigating an

anonymous neglect complaint based upon Plaintiff and his wife's alleged drug use in front of

their children.  (E.D.N.Y. No. 1:05-CV- 3323, Dkt. No. 1.)  The Family Court proceeding

concluded with a finding of neglect against Plaintiff and entry of an order of protection against

Plaintiff barring him from direct contact with his daughter and ordering that the daughter's

counsel be consulted regarding visitation between Plaintiff and his daughter.  *Id*. at ¶¶ 18-20.

Plaintiff sued the caseworker and her supervisor in the Eastern District of New York action and

sought compensatory and punitive damages, as well as injunctive and declaratory relief.  *Id*. at

Sections I and IV.

---

[6]  *See Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) (United States Supreme Court alone can hear a direct appeal from a state court decision); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (district court is without jurisdiction over a challenge to a state court judgment arising out of judicial proceedings even if the state court is alleged to have acted unconstitutionally).  Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction over claims attacking family court decisions regarding custody, neglect, and visitation.  *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)

[7]  Court documents are public records of which the Court can take judicial notice.  *See Kramer v. Time Warner, Inc*., 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts. . . .); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of proceedings in other courts).

The Hon. Raymond J. Dearie, U.S. District Judge, in a Memorandum and Order dated

October 31, 2005, dismissed Plaintiff's complaint on initial review, pursuant to 28 U.S.C.

§ 1915A, for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.  The District

Court certified pursuant to 28 U.S.C. §1915(a)(3) that any appeal would not be taken in good

faith.  (E.D.N.Y. No. 1:05 CV-3323, Dkt. No. 4.)  Plaintiff nonetheless appealed to the Second

Circuit.  *Id*. at Dkt. No. 6.  On December 7, 2007, the Second Circuit denied Plaintiff's

application to proceed *in forma pauperis* on the appeal and dismissed his appeal "because it

lack[ed] an arguable basis in law or fact.  *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); 28

U.S.C. § 1915(e)."[8]  (General Docket U.S. Court of Appeals for the Second Circuit for 07-3428-

pr ("General Dkt."), entry of 12/7/07; *see also* (E.D.N.Y. No. 1:05-CV-3323, Dkt. No. 22.)

Inasmuch as the Second Circuit has ruled that Plaintiff's appeal in *Jean-Laurent v.*

*Stewart* lacked any arguable basis in law or fact, the Court recommends that Plaintiff's First

Amendment claim for denial of access to court against Defendants Briggs, Tyndall, and Pawlin

(Counts V-VII), (Dkt. No. 46 at ¶¶ 65-67), be dismissed without leave to amend.

### B.    Retaliation and Cruel and Unusual Punishment Claims Against Pawlin

1.    Retaliation Claim

The retaliation claim Plaintiff asserted against Defendant Pawlin in his original

---

[8]  Plaintiff moved for an extension of time to file a motion for reconsideration until January 21, 2008, two days before he was transferred to Cape Vincent and more than two weeks before Briggs and Tyndall allegedly destroyed his legal papers.  (General Dkt., entry 1/10/08; No. 9:11-CV-186, Dkt. No. 46 ¶¶ 17-27.)  On February 23, 2008, presumably after the destruction of the papers, the Second Circuit Clerk wrote to Plaintiff informing him that the Court was not in receipt of his motion for reconsideration and advising him to submit a new motion for reconsideration.  (General Dkt., entry 2/13/08.)  The Second Circuit General Docket shows no further activity on the appeal by Plaintiff.

Complaint was dismissed with leave to amend because Plaintiff failed to allege that Pawlin was a defendant in, or was even aware of, a lawsuit Plaintiff had filed against corrections officers – the First Amendment conduct upon which he appeared to rely.[9] (Dkt. No. 31 at 18-19.) *See Wilson v. Kelly*, No. 9:11-cv-00030 (MAD/RFT), 2012 WL 3704996, at *9, 2012 U.S. Dist. LEXIS 121293, at *24 (N.D.N.Y. Aug. 27, 2012)[10] (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity).

Plaintiff relies upon different protected conduct in his Amended Complaint, claiming that Pawlin retaliated against him for having "adamantly complained that the work detail assigned required him to perform certain work that agitated his existing medical condition," by: (1) requiring him to carry heavy loads without assistance on two occasions when he was released from SHU despite knowing of Plaintiff's lower back pain; (2) subjecting him to unusual patterns of movement from housing units without assistance despite his back pain; and (3) informing other housing unit officers that Plaintiff was on his target list and encouraging them to harass him and issue infractions to him. (Dkt. No. 46 at ¶¶ 33-36, 40-42.)

---

[9] To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff, namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977), *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

[10] Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Although Plaintiff failed to provide factual detail regarding his work assignment, the nature and extent of his complaints, and the individual(s) to whom they were directed, the Court finds for purposes of this initial review, that Plaintiff's allegations of complaints about his work assignment arguably constituted speech protected under the First Amendment with respect to his retaliation claim against Pawlin and recommends that Defendants be required to respond to the claim.[11]

### 2. Cruel and Unusual Punishment Against Pawlin

Plaintiff has amended his previously dismissed Eighth Amendment claim for cruel and unusual punishment against Defendant Pawlin for forcing him to carry his possessions, without allowing him to use a push-cart or have another inmate help him even though Plaintiff had significant back pain. *Id*. at 33-36, 41-42. Plaintiff's cruel and unusual punishment claim was dismissed on Defendants' Rule 12(b)(6) motion because his original Complaint failed to allege that Pawlin was aware of his back problems at the time of the actions of which Plaintiff complained.[12] (Dkt. No. 31 at 24-25.)

Plaintiff's Amended Complaint can be liberally construed to plausibly suggest that Pawlin was aware of Plaintiff's low back problems at the time of the alleged cruel and unusual

---

[11] Although Plaintiff does not specifically allege that the complaints concerning his work assignment were made to or regarding Pawlin, construing Plaintiff's Amended Complaint liberally, the Court will assume that to be the case for purposes of its initial review.

[12] Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

punishment because of Plaintiff's complaints that the "work detail [to which he was] assigned required him to perform work that agitated his existing medical condition." *Id*. at ¶ 36. If Pawlin was aware of Plaintiff's low back pain, forcing him to move his belongings on multiple occasions without help arguably involved the unnecessary and wanton infliction of pain by Pawlin in violation of Plaintiff's Eighth Amendment rights. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (under the subjective requirement that must be satisfied to state an Eighth Amendment claim, a plaintiff must demonstrate that a prison official acted with deliberate indifference to an inmate's health or safety).

Given the foregoing, the Court recommends that Defendants be required to respond to Plaintiff's claims for retaliation and cruel and unusual punishment against Defendant Pawlin (Counts II, IV, XI, and XII).[13] (Dkt. No. 46 at ¶¶ 62, 64, 71-71.)

### C.    Supervisory Claim Against Barkley

Plaintiff's Amended Complaint can be liberally construed to assert a new claim against Defendant Barkley, identified in the caption as Superintendent at Cape Vincent.[14] (Dkt. No. 46 at 1.) Plaintiff has alleged that he sent Barkley a copy of an April 30, 2008, letter from Plaintiff to Chief Medical Officer, Dr. Lester Wright, complaining of the "malicious treatment he had been subjected to in plain disregards and indifference to his medical condition." *Id*. at ¶ 43.

---

[13] In recommending that Defendants be required to respond to certain of the claims in Plaintiff's Amended Complaint, the Court is expressing no opinion as to whether any of those claims can withstand a properly filed motion to dismiss or for summary judgment – only that they should survive this initial screening.

[14] Although Plaintiff has not specifically asserted an Eighth Amendment claim against Barclay with respect to his failure to act on Pawlin's alleged cruel and unusual punishment, the Court is required to construe Plaintiff's Amended Complaint to raise the strongest argument it suggests. *See Sealed Plaintiff*, 537 F.3d at 191.

According to Plaintiff, the letter placed Barkley on notice of Plaintiff's mistreatment by Barkley's subordinates, and Barkley failed to act. *Id*.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[15] *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

Under the Second Circuit's decision in *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013), inmates who allege they sent a complaint or grievance letter to a prison official are "entitled to have the court draw the reasonable inference . . . that the [official] in fact received the Letter, read it, and became aware of the alleged conditions of which the inmate complained." *See Castro v. Heath*, No. 9:12-CV-01250 (MAD/DEP), 2013 WL 5354241, at *8, 2013 U.S. Dist. LEXIS 137828, at *16-17 (N.D.N.Y. Sept. 23, 2013) (rejecting defendant's argument that

---

[15]  The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995). The Supreme Court's decision in *Iqbal*, 556 U.S. 662 has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

an allegation plaintiff sent defendant supervisor a grievance stating that the medical staff was not adequately responding to his ear infection failed to allege facts plausibly suggesting personal involvement); *see also Selah v. Fischer*, No. 9:09-CV-1363 (GLS/DEP), 2013 WL 5603866, * 3, 2013 U.S. Dist. LEXIS 147086, at *9 (N.D.N.Y. Oct. 11, 2013) (plaintiff's allegation that supervisory defendant did not respond to grievances and complaints sent by plaintiff was sufficient to satisfy the personal involvement requirement for pleading purposes). Therefore, the Court finds that Plaintiff has alleged personal involvement by Barkley for purposes of this screening and recommends that Defendants be required to respond to Plaintiff's Eighth Amendment claim that Barkley was aware of, and failed to act on, Pawlin's alleged infliction of cruel and unusual punishment on Plaintiff.

### D. Retaliation Claim Against Moehs

Plaintiff's retaliation claim against Defendant Moehs was dismissed with leave to amend on Defendants' Rule 12(b)(6) motion because his original Complaint was devoid of allegations showing a causal relationship between Plaintiff filing a grievance about a lack of medical and dental treatment and seeking redress from the Chief Medical Officer, and Moeh's decision not to continue the course of treatment that had been prescribed for Plaintiff's lower back pain when he took over as his primary health care provider. (Dkt. No. 31 at 20-21.)

In his Amended Complaint, Plaintiff has alleged that on April 30, 2008, he complained directly to Dr. Lester Wright, the Department's Chief Medical Officer, of the malicious treatment he had been given in plain disregard and indifference to his medical condition. (Dkt. No. 46 at ¶ 43.) Therefore, Plaintiff has pleaded conduct that may be protected under the First Amendment. *See Pidlypchak*, 389 F.3d at 380.

By letter of July 29, 2008, the Regional Health Services Administrator informed Plaintiff that his complaint to Dr. Wright had been given to Moehs, who at that time was the Cape Vincent Facility Health Services Director. *Id*. at ¶ 44. The allegation that Moehs was aware of Plaintiff's complaints about the medical care at Cape Vincent at the time he disapproved the TENS unit that had been recommended by Dr. Rosner and told Plaintiff to learn to live with the pain, is sufficient to plausibly suggest adverse action and causation for purposes of this initial review. *Id*. at ¶ 45. Therefore, the Court recommends that Defendants be required to respond to Plaintiff's retaliation claim against Moehs (Counts III and IV). (Dkt. No. 46 at ¶¶ 53 and 54.)

### E.  Medical Indifference Claim Against McAuliffe

In his original Complaint, Plaintiff attempted to assert claims against Defendants McAuliffe, Deputy Supervisor of Security at Cape Vincent, and Barkley, Superintendent at Cape Vincent, for medical indifference arising out of Plaintiff's inability to go to scheduled medical and dental appointments because he was in SHU at Cape Vincent.[16] (Dkt. No. 1 at ¶¶ 27, 29.) Those claims were dismissed with leave to amend on Defendants' Rule 12(b)(6) motion on the grounds that the Complaint failed to allege personal involvement by the two Defendants. (Dkt. No. 31 at 27-28.) Plaintiff has made a slight amendment to his claim against McAuliffe in his Amended Complaint by alleging that "[o]n one occasion when defendant McAuliffe was making rounds in the SHU and plaintiff inquired why he was not taken to the medical facility for his medical and dental appointments; Defendant McAuliffe simply answered 'because you're in the SHU' and walked away." (Dkt. No. 46 at ¶ 38.)

---

[16] Plaintiff has revised his claim against Barkley in his Amended Complaint to allege that he affirmed the denial of Plaintiff's grievance over his medical treatment and mistreatment treatment by Barkley's subordinates at Cape Vincent. (Dkt. No. 46 at ¶¶ 54-56.)

An Eighth Amendment claim alleging medical indifference requires Plaintiff to show that he suffered from a serious medical condition and it was met with deliberate indifference. *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). In the Report-Recommendation on Defendants' Rule 12(b)(6) motion, the Court concluded that for pleading purposes, Plaintiff had satisfied the serious medical condition element of a medical indifference claim with regard to his lower back pain but not the deliberate indifference prong. (Dkt. No. 31 at 25-26.) In his Amended Complaint, Plaintiff has not specifically alleged that he provided McAuliffe with detailed information concerning the severity of his lower back and dental conditions such as would place McAuliffe on notice. However, construing the Amended Complaint liberally, it can be presumed for purposes of this initial review that some level of disclosure of Plaintiff's medical and dental problems and need for medical and dental care would have been made in the exchange between McAuliffe and Plaintiff regarding why Plaintiff was not being taken for his medical and dental appointments. Moreover, the allegations show that McAuliffe was personally aware that inmates in SHU were not allowed to go to medical and dental appointments, and that even after his discussion with McAuliffe, Plaintiff was not taken to medical and dental appointments while in SHU. Therefore, the Court finds that Plaintiff's allegations of personal involvement are sufficient to recommend that Defendants be required to respond to Plaintiff's medical indifference claim against McAuliffe (Counts IX and X). (Dkt. No. 46 at ¶¶ 69-70.)

F. **Medical Indifference Claims Against Defendants Barkley, Hulihan, and Lindquist**

In his Amended Complaint, Plaintiff alleges that he filed a grievance regarding the denial of adequate medical treatment at Cape Vincent, *i.e*, Moeh's interference with treatment he was

receiving for his lower back pain. The grievance was denied and on appeal, Barkley affirmed the adverse grievance determination based solely upon a self-serving memo prepared by Moehs regarding Plaintiff's treatment. *Id*. at ¶¶ 54-56.

In his original Complaint, Plaintiff alleged, in conclusory fashion, that he had complained to Hulihan about the lack of medical care at Mid-State. *Id*. at ¶ 36. In his Amended Complaint, Plaintiff contends that Hulihan wrongfully affirmed the denial of Plaintiff's grievance regarding medical care at Mid-State, also based upon Moeh's report. (Dkt. No. 46 at ¶¶ 54-56.) In his Amended Complaint, Plaintiff also alleges that Lindquist, as Central Office Review Committee Director, upheld the determinations denying his grievances regarding his medical care. *Id*. at ¶ 57.

The district courts in this Circuit "are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying unconstitutional act." *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (collecting cases). There are numerous decisions finding that affirming the denial of a grievance, when that is all that is alleged, is insufficient to establish personal involvement under § 1983. *See, e.g., Perrilla v. Fischer*, No. 13-CV-0398M (RJA), 2013 WL 5798557, at *2, 2013 U.S. Dist. LEXIS 154449, at *21 (W.D.N.Y. Oct. 28, 2013) ("[I]t is well established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement."); *Ramos v. Wright*, No. 9:09-CV-1046 (GLS/RFT), 2011 WL 2462482, at *6, 2011 U.S. Dist. LEXIS 64485, at *15 (N.D.N.Y. Jan. 3, 2011) (dismissal against superintendent on personal involvement grounds where "[p]laintiff's sole factual allegation against [Defendant was] that he affirmed the resolution of Plaintiff's institutional grievance and indicated that Plaintiff was receiving adequate

medical attention."); *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *7, 2010 U.S. Dist. LEXIS 39295, at *25 (N.D.N.Y. Mar. 30, 2010) ("It is clear that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983 [,] particularly if the grievance involves medical care and the reviewer has no medical training.") (citation and internal quotation marks omitted).

Nonetheless, other decisions in the district have found that under certain circumstances, denial of a grievance or the appeal from a grievance is sufficient to show personal involvement at least for the purpose of stating a claim.  *See, e.g. Smith v. Perlman*, No. 9:11-CV-00020 (MAD/CFH), 2014 WL 991854, at *10, 2014 U.S. Dist. LEXIS 32554, at *22 (N.D.N.Y. Mar. 13, 2014) ("While personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals, as opposed to merely rubber-stamping the results.") (citation and internal quotation marks omitted);  *Burton,* 664 F. Supp. 2d at 360 (concluding that "an alleged constitutional violation complained of in a grievance must be ongoing in order to find personal involvement, such as that the supervisory official who reviews the grievance can remedy [it] directly.") (citation and internal quotation marks omitted).

Plaintiff's bare bones claims against Barkley, Hulihan, and Lindquist's for their denial of his appeals from the denial of his grievances may not survive a Rule 12(b)(6) motion or one for summary judgment.  Nonetheless, given the conflict in the district and absence of definitive Second Circuit case law on the issue of personal involvement, the Court finds that dismissal on initial review would be premature and recommends that Defendants be required to respond to

Plaintiff's claims against Defendants Barkley, Hulihan, and Lindquist (Counts XIII, IX, and X). (Dkt. No. 46 at ¶¶ 68-70.)

### G.    Denial of Due Process Claims Against Lane, Beard, Jones, and McAuliffe

Plaintiff's due process claim against Defendants Lane, Beard, and Jones was dismissed on Defendants' Rule 12(b)(6) motion for failure to allege a liberty interest as required to establish as due process violation.[17]  (Dkt. No. 31 at 32-33.)  Plaintiff claims in his Amended Complaint that Lane and Beard filed false misbehavior charges against him with regard to the draft storage bags, as well as other false charges not identified in either the original or Amended Complaint.[18] (Dkt. No. 46 at ¶ 73.)  A prisoner's claim that a corrections officer filed a false misbehavior report may implicate the right to procedural due process under the Fourteenth Amendment. *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986).  The Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he does have "the

---

[17]   To make out a Section 1983 claim for denial of Fourteenth Amendment due process rights, a plaintiff must demonstrate: "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted).  As to the first prong, an inmate can show deprivation of a liberty interest under the due process clause when a prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandlin v. Conner*, 515 U.S. 472, 484 (1995).  As to the second prong, the minimal due process requirements include: "(a) written notice of the claimed violations . . . ; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . .; and (f) a written statement by the fact finders as to the evidence relied on . . . ." *Wolff v. McDonald*, 418 U.S. 539, 559 (1974).

[18]   Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's retaliation claim against Lane and Beard with regard to the allegedly false misbehavior report was denied.  (Dkt. No. 32.)

right not to be deprived of a protected liberty interest without due process of law." *Id*. at 951.

In his Amended Complaint, Plaintiff continues to rely on the argument that Jones' finding of guilt with regard to the draft bags violated his due process rights because it was contrary to a state directive. Violation of a state directive, however, does not give rise to a § 1983 denial of due process claim. *See Cabassa v. Gummerson*, No. 9:01-CV-1039 (DNH), 2008 WL 4416411, *6 n.24, 2008 U.S. Dist. LEXIS 72975, at *6, n.24 (N.D.N.Y. Sept. 24, 2008) (violation of a DOCCS directive does not give plaintiff a claim under 42 U.S.C. ¶ 1983). The claim Plaintiff has added against McAuliffe in his Amended Complaint for disregarding the state directive and upholding the disciplinary hearing determination of guilt suffers from the same infirmity. (Dkt. No. 46 at ¶ 31.)

Plaintiff's Amended Complaint is devoid of factual matter showing that in his hearing before Jones he was denied any of the minimal due process requirements required under *Wolff v. McDonald*, 418 U.S. 539, 559 (1974).[19] Furthermore, Plaintiff's conclusory assertion that he was "subjected to punitive confinement under atypical conditions in relation to the ordinary incidents of prison life" as a result of Land and Beard's false misbehavior charges is insufficient to state a plausible claim for deprivation of a liberty interest. *Id. at* ¶ 73. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.") Plaintiff has alleged that he was subjected to punitive confinement by Jones and McAuliffe but does not allege the period of confinement. *Id*. at ¶ 74. Even if the

---

[19] Plaintiff's assertion that Jones and McAuliffe were not fair, unbiased and impartial in conducting the disciplinary hearing because the statewide directive allowed Plaintiff to used the draft bags for storage (Dkt. No. 46 at ¶ 74) is not sufficient inasmuch as even if Jones erred in finding the violation, violation of a state directive does not support a § 1983 claim. *See Cabassa,* 2008 WL 4416411, *6 n.24.

practice of not allowing inmates in SHU to keep medical and dental appointments could be deemed an atypical condition in relation to the ordinary incidents of prison life for purposes of satisfying the liberty interest requirement, the complete absence of any factual basis for a claim that Plaintiff was denied minimal due process in his hearing or on appeal precludes a finding that Plaintiff has stated a claim for denial of due process.

Plaintiff has already been afforded an opportunity to amend his denial of due process claim. The Court finds that Plaintiff has failed to state a claim for denial of due process in his Amended Complaint, and that there are no facts in the amended pleading that lead the Court to believe Plaintiff would be able to do so if he were allowed another opportunity to amend. Therefore, the Court recommends that Plaintiff's denial of due process claim against Defendants Lane, Beard, Jones, and McAuliffe relating to the draft storage bag violation (Counts XIII, XIV, and XV) be dismissed without leave to amend. *Id*. at ¶¶ 73-75.)

## IV.    CONCLUSION

The Court finds that despite being given the opportunity to amend his complaint, Plaintiff has still failed to state a claim: (1) for denial off access to court in violation of his First Amendment rights against Defendants Briggs, Tyndall, and Pawlin; and (2) for denial of due process in violation of his Fourteenth Amendment rights, arising out of the draft storage bags misbehavior report, hearing, appeal, and punishment against Defendants Lane, Beard, Jones, and McAuliffe. Furthermore, the Court has concluded that even a liberal reading of the Amended Complaint gives no indication that a valid claim might be stated with regard to either the denial of access to court or denial of due process claims. *See Gomez*, 171 F.3d at 795. Therefore, the Court recommends dismissal of the claims without leave to amend.

The Court also recommends that Defendants be required to respond to the remainder of the claims in Plaintiff's Amended Complaint, including those claims sustained on Defendants' Rule 12(b)(6) motion, within thirty (30) days of any Order adopting this Report and Recommendation.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the Amended Complaint (Dkt. No. 46) be accepted for filing as the operative pleading in the action; and it is further

**RECOMMENDED** that the District Court dismiss Plaintiff's First Amendment claim for denial of access to court against Defendants Briggs, Tyndall, and Pawlin, without leave to amend; and it is further

**RECOMMENDED** that the District Court dismiss Plaintiff's claim for denial of due process in violation of his Fourteenth Amendment rights, arising out of the draft storage bags misbehavior report, hearing, appeal, and punishment, against Defendants Lane, Beard, Jones, and McAuliffe, without leave to amend; and it is further

**RECOMMENDED** that the Clerk be directed to terminate Defendants Briggs, Tyndall, and Jones from this action, without leave to amend; and it is further

**RECOMMENDED** that Defendants Lane, Beard, Pawlin, McAuliffe, Moehs, Barkley, Hulihan, Lindquist, and Bezio be directed to respond to the remaining claims in Plaintiff's Amended Complaint within thirty (30) days of any Order adopting this Report and Recommendation; and it is

**ORDERED** that the Clerk's Office provide Plaintiff with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Therese Wiley Dancks
United States Magistrate Judge

Dated:  April 30, 2014
           Syracuse, New York